UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TERRY G. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16CV71 PLC |
| | ) |
| KAREY L. WITTY, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

Plaintiff, a prisoner, seeks leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983. Having reviewed plaintiff's financial information, the Court assesses a partial initial filing fee of $62.28.[1] Additionally, plaintiff will be required to amend his complaint because as currently written, it fails to state a claim upon which relief may be granted.

**Standard of Review**

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and

---

[1] Pursuant to 28 U.S.C. §1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. *See* 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.* A review of plaintiff's account indicates an average monthly deposit of $314.12, and an average monthly balance of $132.28. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $62.28, which is 20 percent of plaintiff's average monthly deposit.

"[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

## The Complaint[2]

Plaintiff, an inmate at Moberly Correctional Center ("MCC"), brings this action pursuant to 42 U.S.C. § 1983, as well as the Americans with Disabilities Act ("ADA"). Plaintiff names as defendants the following: Corizon Correction Health, Inc.; Karen Witty (CEO, Corizon, Inc.); Ralf Sulke (VP, Corizon); Geeneen Wilhite (Corizon, Manager of Health Services at MCC); Renee Tradaro, Corizon, Manager of Health Services at South Central Correctional Center (SCCC)); Dr. Paul Jones (Corizon Employee at MCC); Dr. Aschok Chada (Corizon Employee at SCCC); Matt Strumm (Missouri Department of Corrections ("MDOC"), Division Director in

---

[2]Plaintiff has submitted various supplemental pleadings and "evidence" in the form of multiple motions and various other "exhibits." The Court does not accept amendments by interlineation, and neither the Court nor defendants should be required to comb through plaintiff's multiple filings to "match-up" his allegations with the fourteen named defendants. *See, e.g., Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir.2008) (finding that it is appropriate to deny leave to amend a complaint when a proposed amendment was not submitted with the motion). Plaintiff will be required to file one amended complaint on a court-form containing all of his claims against defendants. No supplements to his amended complaint, or exhibits or motions to the court to "accept evidence" will be allowed during this premature pleading stage.

Jefferson City); Deloise Williams (MDOC, Asst. Director of Health Services in Jefferson City); George Lombardi (Director of MDOC); Michael Bowersox (Warden, SCCC); Michelle Buckner (Asst. Warden, SCCC); Unknown Allen (Correctional Officer, SCCC); Dean Minor (Warden, MCC); Lisa Pogue (Asst. Warden, MCC).

Plaintiff claims that defendants, as a group, have discriminated against him in various ways. He claims that he is a veteran, and he was "disabled" when he entered prison. He asserts that he suffered a fall during training in the U.S. Army in Germany in 1993, resulting in physical damage to his cervical spine, thoracic and lumbar spine, left hip, left knee and left foot. Plaintiff also asserts that his hearing has been damaged as a result of his service in the U.S. Army.

Plaintiff claims that Corizon, the medical service provider for the Missouri Department of Corrections, has been given notice of his purported disabilities on several occasions. He claims that despite having been rated as 100% disabled by the Department of Veterans Affairs, Corizon has "ignored" his official documents relating to his disabilities and made it a practice to deny all incarcerated persons necessary medical supplies and services. Plaintiff states that Corizon has placed profit over health and safety, and he asserts generally that when he entered the prison system that his treatments, access to specialists and pain mitigation stopped.

Plaintiff asserts on some unknown date, as a result of some uncertain conversation, defendant Dr. Chada told plaintiff that it was him, and not the President of the United States, who would decide at MDOC who was disabled.

Plaintiff claims that he has been provided little assistance for his purported disability except over the counter pain medications to treat his chronic pain and arthritis, "with the exception of psychotropic drugs used to mitigate chronic pain such as Effexor or Cymbalta." Plaintiff states that there has been little change to this treatment despite his utilization of the

grievance system. He asserts that in order for him to receive "lay-ins" and not be punished, the Court would have to make Corizon recognize the VA system of disability, including tinnitus and hearing loss.

Plaintiff further asserts, generally, that there are "other conditions of confinement" at MDOC that cause harm, including old and worn mattresses and a general lack of upgraded facilities at MCC, which plaintiff believes are in violation of the Americans with Disabilities Act. For example, plaintiff states that at MCC there are "no handicap showers," meaning there is no wand for the showers, and he does not believe there is enough room for a wheelchair. (Plaintiff does not state whether he is in a wheelchair or whether he needs a wand in the shower or has asked for a wand and been denied such a device.)

Plaintiff states that he also does not believe that there is a handicap cell at MCC, and he states that the entrance to each cell requires stairs. (Again, plaintiff does not state whether he can or cannot traverse stairs.)

Plaintiff also complains that there are long lines for medications and states in a conclusory fashion that "managers" fail to meet ADA duties by failing to have proper policies for the disabled.

Plaintiff alleges that the dining facility does not have "disabled access tables," the Honor House residents must be employable, that in order to get "food visits," inmates must be employable and that when he is transported he has to be shackled in such a way that causes pain to his "disability. (Plaintiff does not mention whether he is "employable.")

Plaintiff additionally complains that MCC is "infested" with mice and cockroaches, and he claims that Corizon staff do not respond to emergencies by inmates, which he states in a conclusory fashion have caused some "deaths."

Last, plaintiff states in a conclusory manner that he has suffered from a skin infection since 2012, and he claims that his skin infection began while he was housed at Bonne Terre (ERDCC). Plaintiff states that when he sought help from unnamed sources during his time at SCCC, he was threatened by unnamed staff for "creating a disturbance." Plaintiff states that while he has been incarcerated at MCC his skin infection has continued. Plaintiff again does not state whether he has asked for and received or been denied treatment for the infection.

In his request for relief plaintiff seeks: an order from this Court ordering MDOC to recognize Federal Law as it pertains to Veteran's Disabilities and Benefits; an order from this Court requiring MDOC to treat all recognized Veteran's Disabilities just as they are treated outside of prison; an order from this Court into "depraved heart" murders by Corizon and MDOC staff; compensatory damages of 25 million dollars and punitive damages of $5,000 per day since his incarceration of May 2012.

## Discussion

A. **Discussion of the Merits of Plaintiff's Allegations in His Complaint**

Plaintiff's complaint does not state whether the MDOC defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under

§ 1983." *Id.* As a result, the complaint fails to state a claim against the MDOC defendants upon which relief can be granted.

Additionally, to the extent plaintiff is attempting to sue Corizon in its official capacity, he has failed to properly allege **that a specific policy or custom of Corizon was responsible for his failure to receive a specific treatment, on a specific date.** *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain allegations that a specific policy of Corizon has resulted **in a denial of treatment to plaintiff,** in violation of the Eighth Amendment, on a specific date or time period. It is insufficient to say that he believes that Corizon is acting unlawfully against **all prisoners** in denying medical care simply because they want to save money. Plaintiff must relate a specific policy or alleged policy to his denial of care if he wishes to sue Corizon or one of its employees in their official capacity.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

In other words, plaintiff cannot just state in his complaint that, in general, it is Corizon's fault, as a whole, that he has not received the treatment he believes he has a right to. He must state a specific treatment, on a specific date that he has been denied. He must also state the specific doctor or nurse who has denied him that treatment and why he believes such treatment was denied.

Individuals may not be sued under a theory of respondeat superior. For example, plaintiff cannot sue an individual simply because they were the head of an agency or the warden of the prison.

Plaintiff's claims that MDOC has violated the ADA in its various prisons by asserting several conclusory allegations is simply too generalized to state a claim at this time. Title II of the ADA applies to inmates in state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-11 (1998). "To state a prima facie claim under [Title II of] the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *see* 42 U.S.C. § 12132. Plaintiff cannot bring the claims of others to this Court, he may only bring his own claims. *See* 28 U.S.C. § 1654; *see also* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1769.1 ("class representatives cannot appear pro se.").

First and foremost, plaintiff has not indicated in his complaint exactly what his alleged disability is at this date, in 2016. Plaintiff has also not alleged exactly which benefits he is seeking to enforce on his own behalf. Moreover, he importantly has not pointed out which benefits he was denied from participating in as a result of his disability, on what date, and by whom. All of the aforementioned needs to be alleged in order to state an ADA claim on his own behalf.

As a result of the aforementioned, plaintiff's complaint is subject to dismissal at this time.

### B. Plaintiff's Specific Request for Injunctive Relief

On November 17, 2016, plaintiff filed a motion for injunctive relief stating that approximately two weeks prior to his filing, "defendants" had failed to provide him with a

renewal for his naproxen prescription and a prescription for medicine for tamsolusin, taken for an enlarged prostrate. Plaintiff failed to identify in his motion exactly which of the fourteen defendants failed to provide him with the medications, or failed to renew the prescriptions, merely noting that when he went to sick call to ask for the renewal he was told by "staff" that there was a failure on their part to have placed the medication in the automatic renewal process. Plaintiff states in his motion that he was told he would not receive the medication until "December."[3]

In his motion for injunctive relief, plaintiff suffers from the same difficulty as the Court noted in the paragraphs above. Plaintiff has not stated exactly **who** supposedly denied him the medication or explained to the Court exactly **why** he was told that the medication was supposedly denied. Moreover, plaintiff has not told the Court **whether or not** he was provided any other medication, such as Tylenol or Ibuprofen or other pain medication in place of his naproxen to take in the meantime, nor has he indicated whether he filed a grievance relating to this alleged occurrence.

To determine whether preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to movant, the potential harm to the nonmoving party should injunction issue, the likelihood of success on merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

At this point in the case, because plaintiff has not even told the Court who the proper defendant is in his request for injunctive relief, a specific injunction requiring an **unnamed defendant** to provide plaintiff with the medication cannot issue. His motion for injunction will be denied without prejudice.

---

[3]The Court is hopeful that plaintiff has received his medication by today's date.

**C. Instructions for Plaintiff to Amend His Complaint**

Because plaintiff is proceeding pro se, the Court will allow plaintiff to file an amended complaint on a Court form. Plaintiff shall have thirty days from the date of this Order to file an amended complaint in accordance with the specific instructions set forth herein. All claims in an action must be included in one, centralized complaint form, as neither the court nor defendants wish to search through supplemental and prior pleadings in order to piece together plaintiff's claims.

**As such, plaintiff is warned that the filing of an amended complaint replaces the original complaint and all previously-filed pleadings, and so he must include each and every one of the claims he wishes to pursue in the amended complaint.** *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005). **Any claims from the original complaint, supplements, and/or pleadings that are not included in the amended complaint will be deemed abandoned and will not be considered**. *Id*. **If plaintiff wishes to sue defendants in their individual capacities, plaintiff must specifically say so in the amended complaint. If plaintiff fails to sue defendants in their individual capacities, this action may be subject to dismissal**. All of plaintiff's claims should be clearly set forth in the "Statement of Claim." If plaintiff fails to file an amended complaint on a Court form within thirty days in accordance with the Court's instructions, the Court will dismiss this action without prejudice and without further notice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $62.28 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[4]

**IT IS FURTHER ORDERED** that plaintiff's motions to supplement his complaint [Doc. #5, #6, #7, #8, #10, #11, #12] are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's request for specific injunctive relief relating to an order from this Court to mandate Corizon to provide plaintiff with specific pain medications on an automatic chronic care renewal process is [Doc. #13] **DENIED WITHOUT PREJUDICE** at this time.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint in this action within thirty (30) days of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk shall mail to plaintiff a Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that if plaintiff fails to comply with this Memorandum and Order, plaintiff's action will be dismissed, without prejudice.

Dated this 2nd day of December, 2016.

                                                        HENRY EDWARD AUTREY
                                                        UNITED STATES DISTRICT JUDGE

---

[4]After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).