# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| TERRY G. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16CV71 PLC |
| | ) | |
| KAREY L. WITTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is plaintiff's amended complaint.  Also before the Court are a plethora of "declarations" and "exhibits,"[1] as well as several motions for injunctive relief. It appears that some of plaintiff's "declarations" are supplements to his amended complaint, while other declarations are "evidence" meant to be offered to the Court at this time.   After reviewing the amended complaint the Court will issue on the meritorious claims in plaintiff's amended complaint and dismiss the claims subject to dismissal, pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court will also dismiss all of plaintiff's requests for injunctive relief at this time.  A separate Order of Partial Dismissal will accompany this Memorandum and Order.

---

[1]Plaintiff was told in the Court's December 2, 2016 Memorandum and Order that the Court does not accept amendments by interlineation, as neither the Court nor defendants should be required to comb through plaintiff's multiple filings to "match-up" his allegations with the sixteen named defendants.  *See, e.g., Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir.2008) (finding that it is appropriate to deny leave to amend a complaint when a proposed amendment was not submitted with the motion).  **No supplements to his amended complaint, or exhibits or motions to the court to "accept evidence" will be allowed during this premature pleading stage.  Plaintiff's "declarations" and exhibits" will be stricken from the Court's record.**

**Standard of Review**

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

**The Amended Complaint**

Plaintiff, an inmate at Moberly Correctional Center ("MCC"), brings this action pursuant to 42 U.S.C. § 1983, as well as the Americans with Disabilities Act ("ADA").

Plaintiff names as defendants the following: Corizon Correction Health, Inc.; Karey Witty (CEO, Corizon, Inc.); Ralf Sulke (VP, Corizon); Geeneen Wilhite (Corizon, Manager of Health Services at MCC); Renee Tradaro, (Corizon, Manager of Health Services at South Central Correctional Center (SCCC)); Cathy Barton (Manager of Nurses, SCCC); Dr. Paul Jones (Corizon Employee at MCC); Dr. Aschok Chada (Corizon Employee at SCCC); Matt Sturmm (Missouri Department of Corrections ("MDOC"), Division Director in Jefferson City); Deloise

Williams (MDOC, Asst. Director of Health Services in Jefferson City); George Lombardi (Director of MDOC); Michael Bowersox (Warden, SCCC); Michelle Buckner (Asst. Warden, SCCC); Unknown Allen (Correctional Officer, SCCC); Dean Minor (Warden, MCC); Lisa Pogue (Asst. Warden, MCC).

Plaintiff states that the following defendants are "sued in their official capacity" for nonfeasance: Matt Sturmm; George Lombardi: Deloise Williams: Michael Bowersox; Michelle Buckner: Officer Allen; Dean Minor and Lisa Pogue. Plaintiff states that the following defendants are "sued in their personal [individual] capacity for deliberate indifference and reckless disregard for petitioner's health": Karey Witty; Ralf Sulke; Geeneen Wilhite; Renee Tradaro; Cathy Barton; Dr. Paul Jones; and Dr. Aschok Chada.

**A. Count I**

In the first part of plaintiff's amended complaint, he claims generally that "defendants, as a group," have discriminated against him in various ways. He claims that he is a veteran, and he was "disabled" when he entered prison. He asserts that he suffered a fall during training in the U.S. Army in Germany in 1993, resulting in physical damage to his cervical spine, thoracic and lumbar spine, left hip, left knee and left foot. Plaintiff also asserts that his hearing has been damaged as a result of his service in the U.S. Army.

Plaintiff claims that Corizon, the medical service provider for the Missouri Department of Corrections, has been given notice of his purported disabilities on several occasions. He claims that despite having been rated as 100% disabled by the Department of Veterans Affairs, Corizon has "ignored" his official documents relating to his disabilities and made it a practice to deny all incarcerated persons necessary medical supplies and services. Plaintiff states that Corizon has

placed profit over health and safety, and he asserts generally that when he entered the prison system in May 2012 that his treatments, access to specialists and pain mitigation stopped.

In Count I of the amended complaint, plaintiff asserts that he has sought numerous services for his chronic pain. He claims that while he was incarcerated at SCCC, in December 2015, he sought treatment from Dr. Chada for "great pain in his cervical spine and left leg." He claims that despite having been told by a specialist prior to being incarcerated that he would need disc replacement surgery, he was only being given naproxen and Effexor for pain. He told Dr. Chada he needed additional treatment, but Dr. Chada told him that it was him, and not the President of the United States, who would decide at MDOC who was disabled. Plaintiff claims that he filed a grievance relating to Dr. Chada's refusal to treat his medical issues, and defendant Cathy Barton "promised to correct the issues," but failed to do anything about the situation. Plaintiff claims he was transferred to Moberly Correctional Center a few months later. Plaintiff asserts that after he was transferred to Moberly he saw Dr. Jones, who also failed to treat his leg and back issues adequately.

Plaintiff states "it was explained to him" by Dr. Chada and Cathy Barton that MDOC's Central Office – Matt Sturmm and Deloise Williams – would not approve the type of treatment plaintiff was in need of because they did not recognize his VA ratings and because the treatment was too expensive. Plaintiff complains that MDOC's unofficial custom and habit is to keep cost at a minimum by denying expensive care and only allow treating physicians to provide minimal medications.

In his "Statement of Claim," plaintiff asserts that Count I includes a deliberate indifference, under the Eighth Amendment, by defendants Karey Witty, Ralf Sulke, Geneen Wilhite, Renee Tradaro, Cathy Barton, Dr. Jones, Dr. Chada, Matt Sturmm and Deloise Williams

to "provide treatment or access to a specialist necessary to address [plaintiff's] service connected disabilities." Plaintiff appears to believe he should have been taken to see an orthopedic surgeon, a pain mitigation specialist, as well as an outside physical therapist.

### B. Count II

Plaintiff claims that defendants Michelle Buckner and Lisa Pogue, ADA coordinators at their respective correctional facilities, have failed to comply with the Americans with Disabilities Act. Plaintiff states that the bunk beds and mattresses provided to the inmates are inadequate for those with recognized back and neck and leg disabilities. He states that the inadequate facilities exacerbate his chronic pain. He claims that if the ADA coordinators recognized his VA disability status, they would recognize that he should not be sleeping on a flat piece of steel and a mattress made from inferior foam.

Plaintiff's "Statement of Claim," alleges "nonfeasance" on the part of George Lombardi; Michael Bowersox; Michelle Buckner; Dean Minor; and Lisa Pogue for their purported failure to recognize Section 38 of the Federal Code covering Disabled Veterans and applying the ADA and Rehabilitation Act to assist disabled Veterans.

### C. Count III

Plaintiff claims that the housing units at Moberly Correctional Center are not in compliance with the Americans with Disabilities Act. He states that Lisa Pogue, the ADA coordinator at MCC knows, or should know, that persons with bi-pedal issues or who are wheelchair-bound, need ramps to enter or exit the housing unit, as each housing unit at MCC requires stairs to get into or out of. Plaintiff states that he has to use a cane to walk because his left leg is painful and cannot bend, and he states that stairs cause him considerable pain to traverse and increase his chances of falling. Plaintiff claims that doctors have told him that if he

falls again he will suffer back and leg injuries again, which will be detrimental to his chronic medical care.

Plaintiff also complains that the showers at MCC are not handicap accessible, as they do not contain a seat or grab bars. Plaintiff claims that he requested a shower stool in April of 2016 from Corizon in a Medical Service Request, but his request was denied.

Plaintiff's "Statement of Claim," alleges "nonfeasance" on the part of George Lombardi; Dean Minor; and Lisa Pogue at MCC. Plaintiff alleges that MCC housing units are not in compliance with ADA law.

## D.  Count IV

Plaintiff claims that in violation of the ADA he has been disciplined as a result of his medical disability, his hearing loss. He claims that defendant Correctional Officer Allen has bullied him and made racial slurs towards him, as well as assessed conduct violations against him because he has been unable to hear his commands due to his hearing loss.

Plaintiff states that he has requested from unnamed doctors at Corizon that he be taken to an audiologist to determine if he needs hearing aids, but Corizon has refused to do so. Plaintiff states that Corizon's "test" for hearing loss involves a nurse standing on the side of the room and slowly raising her voice asking plaintiff if he could hear her.

Plaintiff's "Statement of Claim," alleges that he received "discrimination and punishment" by staff at MDOC. He claims "nonfeasance" by George Lombardi; Michael Bowersox; Michelle Buckner; Dean Minor; and Lisa Pogue. He claims correctional officers often discrimination at MDOC, but Directors and Supervisors turn a blind eye to the acts and often fail to enforce Federal ADA law and current MDOC policy.

## E.  Count V

Plaintiff states that he has suffered from multiple skin infections since he has been incarcerated at MDOC. He states that he and others have been denied emergency services by defendant Allen and a "Nurse Tablitha" because they had medical issues that purportedly were not "life threatening." He claims that on one such occasion he allegedly had a staff infection in his skin.

In his "Statement of Claim," plaintiff alleges "nonfeasance" occurred on the part of all listed defendants by failure to ensure that emergency services are available to all persons incarcerated at MDOC.

**F. Count VI**

Plaintiff states that he has requested he be sent to a specialist for his multiple skin infections, but he was told "no" by some unnamed individual because purportedly "Matt Sturmm and Deloise Williams" would not authorize the treatment. Plaintiff states that he has scarring on much of his body due to multiple skin infections, and he recently found out he has pernicious anemia. Plaintiff alleges that at least on one occasion Dr. Chada ordered Mupirocin treatment for a skin infection for plaintiff, but Matt Sturmm and Deloise Williams denied the "necessary treatment" for plaintiff due to cost.

Plaintiff alleges in his "Statement of Claim" that there was "nonfeasance" on the part of Karey Witty; Ralf Sulke; Geeneen Wilhite; Renee Tradaro; Cathy Barton; Dr. Paul Jones; and Dr. Aschok Chada for failure to provide necessary access to a specialist in bacterial infections of the dermis.

**G. Count VII**

Last, plaintiff complains about the conditions of confinement at MCC. Plaintiff asserts that the housing units at Moberly are "infested" German Brown cockroaches which defendants

only treat with ineffective watered-down insecticide or boric acid. Plaintiff purports that MDOC refuses to have an extermination company come in to treat the bugs because of the expense.

Plaintiff additionally complains that the heat in the cells often reaches over 100 degrees in the summer and below freezing in the winter. Plaintiff also complains that there is a rodent problem in the cells.

In his "Statement of the Claim," plaintiff alleges that there was "nonfeasance" on the part of George Lombardi; Dean Minor and Lisa Pogue because defendants have a duty to ensure that the housing units comport with the health and safety of all persons being housed.

### H. Request for Relief

In his request for relief plaintiff seeks: an order from this Court ordering MDOC to recognize Federal Law as it pertains to Veteran's Disabilities and Benefits; an order from this Court requiring MDOC to treat all recognized Veteran's Disabilities just as they are treated outside of prison; an order from this Court into "depraved heart" murders by Corizon and MDOC staff; compensatory damages of 25 million dollars and punitive damages of 100 million.

### Discussion

### A. Discussion of the Merits of Plaintiff's Allegations in the Amended Complaint

### a. Count I

In Count I, plaintiff brings a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against defendants Karey Witty, Ralf Sulke, Geeneen Wilhite, Renee Tradaro, Cathy Barton, Dr. Jones, Dr. Chada, Matt Sturmm and Deloise Williams. He asserts that these defendants failed to "provide treatment or access to a specialist necessary to address [his] service connected disabilities." Plaintiff appears to believe that as a result of his leg and back issues, he should have been taken to see an orthopedic surgeon, a pain

mitigation specialist, as well as an outside physical therapist. All of the defendants have been named in their individual capacity except for Matt Sturmm and Deloise Williams, MDOC Division Medical Directors, who have been named in their official capacities only.

Unfortunately, in the body of Count I, plaintiff has only made personal allegations against Dr. Chada, Cathy Barton, and Dr. Jones. As such, defendants Karey Witty, Ralf Sulke, Geneen Wilhite and Renee Tradaro will be dismissed from Count I due to plaintiff's failure to allege lack of causal connection. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff states that he told Dr. Chada, Cathy Barton and Dr. Jones that the naproxen and Effexor he was being given for pain, as well as the prior treatment for his cervical spine and leg, was not working and that he needed additional treatment. Plaintiff states that none of these particular individuals provided him with additional treatment even though they knew he was in pain and the prior treatment wasn't working. Plaintiff also states that Dr. Chada and Cathy Barton "explained to him" that the MDOC Central Office, made up of Matt Sturmm and Deloise Williams – would not approve additional treatment because it was too expensive.

Plaintiff has also made an allegation that MDOC had a policy and/or custom of keeping costs at a minimum by failing to approve additional treatments for VA disabled or chronic care inmates. Plaintiff's conclusory statement, told to him by two Corizon employees, cannot form the basis for an official capacity claim against defendants Sturrm and Williams, Medical Directors at MDOC. Moreover, naming Sturrm and Williams in their official capacities is the equivalent of naming the Missouri Department of Corrections in this action, or in this case the

State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the amended complaint fails to state a claim against defendants Sturrm and Williams with respect to plaintiff's Eighth Amendment claims.

Plaintiff's individual capacity allegations, however, against defendants Dr. Chada, Cathy Barton and Dr. Jones all survive § 1915 review under the Eighth Amendment for deliberate indifference to plaintiff's serious medical needs for his leg and back issues.

**b. Count II**

In Count II of plaintiff's amended complaint he complains that defendants Michelle Buckner, Assistant Warden at SCCC, and Lisa Pogue, Assistant Warden at MCC, are the ADA coordinators at their respective facilities and have failed to comply with the ADA by failing to provide mattresses and bunk beds that are adequate for those with recognized back, neck and leg disabilities.[2] Plaintiff's claims against Pogue and Buckner have been brought under the ADA in their official capacities.

Title II of the ADA applies to inmates in state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-11 (1998). "To state a prima facie claim under [Title II of] the ADA, a plaintiff must allege: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due

---

[2] In his "Statement of Claim," in Count II, plaintiff states that he is also bringing Count II against George Lombardi, Michael Bowersox and Dean Minor, but he has not made any specific claims against these individuals. Accordingly, plaintiff's claims against these persons will be dismissed. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *see* 42 U.S.C. § 12132.

Reading his amended complaint as a whole, the Court finds that at this time, plaintiff has alleged enough to survive § 1915 review for an ADA claim against Lisa Pogue and Michelle Buckner, in their official capacities, for a failure to accommodate his back, neck and leg pain in relation to the bunk beds and mattresses at SCCC and MCC. The Court will order the Clerk to issue process on these claims.

### c. Count III

Plaintiff's claims in Count III of his amended complaint are against Lisa Pogue, alleged ADA coordinator at MCC. Plaintiff asserts that because he has back and leg disabilities, he is forced to use a cane to traverse. He claims that the housing units cannot be accessed without using stairs to get into or out of the units. He also claims that the showers are not handi-capped accessible, as they do not have a seat or grab-bars, and he has requested and been denied a seat. The Court will issue process on plaintiff's claims relating to the handicap accessibility of the housing units at MCC (relating to the stairs), as well as the handi-cap accessibility of the showers at MCC. Although plaintiff has named George Lombardi and Dean Minor in his "Statement of Claim," the proper defendant is Lisa Pogue as the ADA coordinator, in her official capacity only. Plaintiff's claims against Dean Minor and George Lombardi with respect to his ADA claims in Count III will be dismissed.

### d. Count IV

Plaintiff claims that Correctional Officer Allen has disciplined him in violation of one his

disabilities – his hearing loss. He asserts that Allen has given him conduct violations for "failing to follow orders," even though he was simply unable to hear commands when given. Plaintiff brings his allegations against defendant Allen in his official capacity.

Plaintiff's conclusory allegations against "directors and supervisors" at MDOC is not enough to state a claim against George Lombardi, Michael Bowersox, Michelle Buckner, Dean Minor or Lisa Pogue in this instance. Thus, these allegations are subject to dismissal.

However, plaintiff has alleged enough to survive § 1915 review for an ADA violation against Correctional Officer Allen in this instance. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. ▯ 12132. Title II of the ADA applies to inmates in state prisons. *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) ("*Randolph I*") (citing *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–11 (1998)).

Here, plaintiff asserts that he is hearing impaired and that he is being discriminated against through punishment for his inability to respond to alarms, announcements, and commands that he purportedly cannot hear. Plaintiff's ADA claims against MDOC (or Officer Allen in his official capacity under the ADA) survive review under 28 U.S.C. § 1915(e). *United States v. Georgia*, 546 U.S. 151, 159 (2006) (noting that "Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the *Fourteenth Amendment*, [and thus,] Title II validly abrogates state sovereign immunity."); *Randolph v. Rogers*, 253 F.3d 342, 348 (8th Cir. 2001) ("Randolph II") (noting that Supreme Court precedent

"permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law.") (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

### e.  Count V

In Count V plaintiff claims, generally, that "it is the custom and habit of MDOC personnel and Corizon nurses" to deny inmates emergency services.  Plaintiff then notes that he has suffered from skin infections for years while incarcerated at MDOC and a Nurse Tablitha and Correctional Officer Allen failed to provide him "emergency services" when he had a painful staff infection that was draining one weekend.

Plaintiff does not state that either defendant failed to provide him with any health services whatsoever.  He merely states that "defendants" have a habit of failing to provide "emergency services."

To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle*, 429 U.S. at 106.  In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs.  *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Plaintiff does not allege that the brief delay in treatment was responsible for aggravating his purported condition. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."  *Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 632 (8th Cir. 2009) (*citing Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006)). A delay as brief and as non-detrimental as plaintiff alleges does not state a claim for deliberate

indifference to his serious medical needs.  *See Johnson*, 452 F.3d at 973 (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (finding that a prisoner's claim for delay of one month between complaint of leg pain and visit with doctor was insufficient to state a constitutional claim absent allegations the condition required immediate attention or the delay in treatment aggravated the condition).

Accordingly, plaintiff's amended complaint fails to state a claim against either Correctional Officer Allen and Nurse Tablitha.  Additionally, the defendants mentioned in the "Statement of the Claim" – Karey Witty, Ralfe Sulke, Geeneen Wilhite, Renee Tradaro, Cathy Barton, Dr. Paul Jones, and Dr. Aschok Chada – are also subject to dismissal, as no specific allegations were made against these defendants.

### f.   Count VI

In Count VI of plaintiff's amended complaint he claims that he requested a specialist review his chronic skin infections, but he was told that would not be possible because purportedly "Matt Sturmm and Deloise Williams" (MDOC Medical Directors) would not authorize the treatment.  Plaintiff has failed to articulate who told him this information and exactly who told him he would not be able to see a specialist.[3]

However, plaintiff does allege that on at least one occasion, Dr. Chada authorized treatment of his skin with Mupirocin treatment, but Matt Sturmm and Deloise Williams denied

---

[3]Plaintiff again lists several persons as defendants in his "Statement of Claim," but he has not provided any factual assertions against these defendants.  Accordingly, the Court must dismiss these defendants – Karey Witty; Ralf Sulke; Geeneen Wilhite; Renee Tradaro; Cathy Barton; Dr. Paul Jones; and Dr. Aschok Chada – due to a lack of causal connection with the allegations in this claim. Because plaintiff has not named specifically which defendant denied him access to a specialist when it was purportedly medically necessary, the Court cannot issue on that individual defendant for a violation of the Eighth Amendment.

the treatment due to cost. Plaintiff sues Matt Sturmm and Deloise Williams in their official capacities. Unfortunately, as noted above, because plaintiff has sued these individuals in their official capacities, his claims against them are subject to dismissal. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

### g. Count VII

In Count VII of plaintiff's amended complaint, he complains about the conditions of confinement at MCC. He asserts that the cells are infested with cockroaches and rodents, which are not adequately treated by MDOC. Plaintiff also claims that MCC facilities are deplorable, with poor insulation, outdated heating/air-conditioning and old windows. Plaintiff alleges that in the summer the heat can reach as high as 100 degrees in the cells, while in the summer it can go below freezing.

Although plaintiff has named George Lombardi, Dean Minor and Lisa Pogue in his "Statement of Claim," he has not articulated one individual that he has reported the alleged poor conditions of confinement to and received a response back from relating to the alleged conditions. Plaintiff also has not indicated how any of the three individuals named would have a causal connection to the aforementioned allegations, other than being supervisory individuals in the MDOC system, itself, as well as at MCC. Plaintiff's failure to do so must result in a dismissal of this allegation at this time. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for

supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

**B. Plaintiff's Motions for Injunctive Relief**

**a. Docket No. 16 – Conditions of Confinement Issue**

On January 1, 2017 [Doc. #16], plaintiff filed a request for injunctive relief, seeking an injunction ordering MDOC to make "improvements to [MCC] to comply with human decency and replace the windows or other repairs that meet ANSI standards or local building codes." Plaintiff stated in his motion that the windows in the housing unit lacked appropriate seals and the winter winds and rainstorms often blow hard enough to invade the plastic taping over the window coverings. Plaintiff indicated in his motion that he had not grieved his request prior to filing his motion for injunctive relief.

To determine whether preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to movant, the potential harm to the nonmoving party should injunction issue, the likelihood of success on merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

In his motion for injunctive relief, plaintiff suffers from the same difficulty as the Court noted in **Count VII** above. First, plaintiff has not stated that he made a request to anyone at the prison to fix the aforementioned situation. Moreover, although plaintiff **anticipates** that there may be difficulties as the Winter and Spring progress, such as high winds and rain, he cannot state with certainty that such problems will occur. Rather, plaintiff states in a conclusory manner that he believes that on the night of the filing of the motion the temperature in his cell will be the same inside as it is outside and the "heat radiator type from the 1960s cannot keep up."

The Court cannot and will not enter an anticipatory injunction. If plaintiff believes that his cell is too cold, he should immediately report it through the proper prison channels, including the IRR and grievance process. Once he has done so, he may bring the matter to the Court's attention if remedial measures are not taken by the MDOC. However, the Court will not order MDOC to do "improvements to the prison" without evidence that there is indeed a serious issue that has first been informally addressed within the confines of the grievance system. His motion for injunctive relief will be denied.

### b. Docket Nos. 21, 24, 25 – Automatic Renewal of Omeprazole Medication

On January 23, 2017, [Doc. #21] plaintiff filed a request for injunctive relief, seeking a mandatory injunction against defendants Karey Witty, Ralf Sulke, Matt Sturmm, Deloise Williams, Geneen Wilhite and "associated doctors and/or staff at Moberly Correctional Center and Corizon Medical Facility," to provide plaintiff an automatic renewal for a medication called Omeprazole.[4]

Plaintiff stated in his motion that defendants had failed to provide him with an automatic renewal for his gastroesophageal medical because they did not recognize his GI issues, or reflux disorder/irritable bowel disorder as a chronic care issue. Plaintiff asserts that each time he needs the medication he must visit the nurse with a medical service request and ask the nurse to schedule a visit with the doctor, which can require a wait. Plaintiff complains that sometimes he may have to go without his medication for several days as a result of "defendants'" failure to schedule the doctor visit in a timely manner.

---

[4] Plaintiff filed two supplements to his motion for injunction relief concerning this matter on January 31, 2017 and again on February 2, 2017. *See* Docket Nos. 24 and 25. In Doc.#25 plaintiff acknowledges that "outside of the normal process," someone from Corizon ordered pantoprazole from Sam's pharmacy and mitigated the length of time plaintiff was without his medication for GERD.

The gist of plaintiff's argument is that defendants will not recognize GERD as a chronic condition and treat it within the chronic care policy, which allows for automatic refills. Instead, each month the refill expires and a new refill must be obtained.

To determine whether preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to movant, the potential harm to the nonmoving party should injunction issue, the likelihood of success on merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

Plaintiff has not indicated which of the named defendants he has asked to make his GERD medication a "chronic care medication" pursuant to the chronic care policy, such that it would be eligible for the automatic refill policy.[5]

Plaintiff has also failed to indicate which of the defendants have interfered with the timely refill of his omeprazole. In fact, plaintiff concedes, in Docket No. 25 that "someone from Corizon" provided he and others at MCC with GERD medication in a timely manner in order to make sure they did not run out of their medication. Given such factual circumstances, the Court is unable to grant plaintiff's motion for injunctive relief. His request will be denied.

### c. Docket No. 26 – Medication Dispensation Time Periods

On February 8, 2017, plaintiff filed a third request for injunctive relief, seeking to restrain defendants at Moberly from scheduling dispensing medications during meal times. [Doc. #26] Plaintiff states that on 2/2/2017 he failed to receive his dermatitis medication because he **failed to arrive** at the medication pickup, with his medical cards turned in by 12:45. Plaintiff claims that medical cards must be placed in the "cup" no later than 12:45 or 5:45, or the nurses cannot

---

[5]Moreover, plaintiff has not articulated exactly what the "chronic care policy" is, or why plaintiff's GERD medication is not considered part of the "chronic care policy" such that it is not subject to automatic renewal.

provide the medication refills. Because plaintiff did not arrive until 12:50, the nurse on duty denied him a refill, plaintiff claims. Thus, plaintiff believes that defendants should be enjoined from such a medication dispensation policy.

In his own words, plaintiff states that inmates can receive medication at either the noon or the evening meal times. Because plaintiff alleges in his motion that he was late for only the noon meal-time, the Court cannot find that he is entitled to an injunction that the medication dispensation time period is unreasonable and should be enjoined based on the facts provided by plaintiff. In other words, plaintiff could have gone to pick up his medication at the evening meal time instead. Plaintiff's request for an injunction is denied.

### d. Docket No. 28 – Food Visitation Rights

On February 13, 2017, plaintiff filed a fourth request for injunctive relief, seeking to restrict defendants from enforcing the "food visit policies" against him at Moberly. [Doc. #28] Plaintiff seeks to have a "food visit" with his family, but he claims that in order to "earn" the visit a prisoner has to be able to work or attend a class while housed at MCC. Plaintiff believes such a policy is discriminatory when it will be applied to persons who are disabled. Plaintiff asserts that he is "unable to work" and has "a four-year degree" so "requiring him to attend classes that are far below his education level is redundant and purposeless" and will "violate his Fifth Amendment right."

Plaintiff **has not included** a copy of the Food Visit Policy at MCC with a copy of his request for injunctive relief. Additionally, plaintiff has not included factual information relating to when he purportedly asked for a food visit and was denied such an event.

Indeed, it is clear from the wording of the motion for injunctive relief that the motion for injunction is anticipatory, as the denial has not yet occurred. Additionally, once again, plaintiff

has indicated that he has not grieved his anticipated denial of a food visit with the authorities at the MDOC or MCC. The Court will not entertain plaintiff's motion for injunction relating to a "policy" or "custom" of the prison or MDOC without first having plaintiff present his request to the prison authorities and grieve, if necessary, the authorities' response.

If plaintiff believes that the MDOC response is discriminatory or infringes upon his constitutional rights in some way, he should renew his request for relief at a later date. His motion for injunctive relief with respect to his anticipated food visitation rights will be denied.

### e. Docket No. 29 – Verbal Threats Relating to Access of Law Library

On February 13, 2017, plaintiff filed a fifth request for injunctive relief, seeking to enjoin an individual by the name of Jennifer Cook, a librarian at MCC, from "threatening" him from removal from the law library at MCC, in addition to one time threatening him with "Ad-Seg." [Doc. #29]

Plaintiff states that on February 9, 2017, he was using the law library at MCC to assist another inmate named Ja'Juam Williams with his lawsuits. Plaintiff claims that "while at the library, several persons came to the table or computer to ask plaintiff a question concerning the law." Plaintiff believes that because several of the individuals were African American, Jennifer Cook, the librarian threatened plaintiff by ordering him from the law library that day.

Plaintiff claims that he was "specifically in the law library doing research and interviewing witnesses for the lawsuits" and Ms. Cook "threatened him with possible sanction of Ad-Seg." Plaintiff states that this is the fourth incident he has had with Ms. Cook in the past

several months, and he believes Ms. Cook is racist.[6]  Plaintiff believes Ms. Cook is impeding his access to the Courts and he seeks to enjoin her behavior.

To determine whether preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to movant, the potential harm to the nonmoving party should injunction issue, the likelihood of success on merits, and the public interest.  *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

Plaintiff is not entitled to an injunction on his claim relating to the verbal threats against Ms. Cook because he cannot show that he suffered an actual injury to a pending or contemplated legal claim. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996).  Additionally, plaintiff has not indicated that he was ever placed in Administrative Segregation as a result of Ms. Cook's threats, or that he was kept from working in the library as a result of her alleged threat.  As plaintiff has no likelihood of success on the merits at this time relative to his request for injunctive relief, his request must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall issue process on the following individuals in their individual capacity pursuant to the service agreement the Court maintains

---

[6]Plaintiff states in his motion that Ms. Cook threatened him with Ad-Seg on only one occasion. He does not state how or why this verbal threat came up in conversation or whether or not Ms. Cook has such a power to transfer plaintiff to Ad-Seg. This purported "verbal harassment" does not rise to the level required to establish a constitutional violation. *See, e.g., McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993); *King v. Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right). Moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong. *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987) (noting that a mere naked threat to engage in an act prohibited by the Constitution is not equivalent to doing the act itself). A deprivation of "peace of mind" similarly does not support a constitutional claim. *King,* 117 F.3d at 1067.

with Corizon: Dr. Aschok Chada; Dr. Paul Jones and Cathy Barton for an alleged deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment relative to plaintiff's back and leg issues. Defendants shall answer plaintiff's claims relative to Count I of his amended complaint. No other claims shall issue with respect to these defendants.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process on the following Corizon employees: Karey Witty, Ralf Sulke, Geeneen Wilhite, or Renee Tradaro. The claims in plaintiff's amended complaint against these individuals are subject to dismissal. The claims against Corizon, LLC are also subject to dismissal.

**IT IS FURTHER ORDERED** that the Clerk shall issue process pursuant to the waiver of service agreement the Court maintains with the Missouri Attorney General's Office on: Lisa Pogue, Michelle Buckner and Correctional Officer Allen, relative to plaintiff's claims pursuant to the Americans with Disability Act violations which allegedly occurred at SCCC and MCC. Defendant Pogue shall answer the claims encompassed in Counts II and III of plaintiff's amended complaint. Defendant Buckner shall answer the claims set forth in Count II in plaintiff's amended complaint. Defendant Allen shall answer the claims set forth in Count IV of plaintiff's amended complaint. No other claims shall issue with respect to these defendants.

**IT IS FURTHER ORDERED** that no claims shall issue on MDOC employees: Dean Minor, George Lombardi, Michael Bowersox, Matt Sturmm, or Deloise Williams. The claims in plaintiff's amended complaint against these individuals are subject to dismissal.

**IT IS FURTHER ORDERED** that plaintiff's request for injunctive relief relating to his request for the Court to order new construction at Moberly Correctional Center [Doc. #16] is **DENIED WITHOUT PREJUDICE** at this time.

**IT IS FURTHER ORDERED** that plaintiff's requests for injunctive relief for a Court Order for automatic renewal of his Omeprazole [Doc. #21, #24 and #25] are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's request for injunctive relief enjoining MCC from scheduling dispensing medications during meal times [Doc. #26] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's request for injunctive relief seeking to restrict defendants from enforcing the "food visit policies" against him at Moberly [Doc. #28] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's request for injunctive relief seeking to restrict defendants from threatening him with removal from the law library at MCC and with the disciplinary sanction of "Ad-Seg" [Doc. #29] is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the following declarations filed by plaintiff, offered as supplements to his amended complaint or exhibits to the record [Doc. #18, #19, #20, #22, #23, #27, #30, #31, #32, #33, #34, #35, #36, #37, #38 and #39] are **STRICKEN**.

An Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 9th day of March, 2017

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE